(No. 32430.—

LILLIAN KEE LARVENETTE *et al.,* Appellants, *vs.* IVAN A. ELLIOTT, Attorney General, *et al.,* Appellees.

*Opinion filed June 4, 1952—Rehearing denied September 15, 1952.*

ELMER R. SEGAL, and DAVID B. ROTHSTEIN, both of Chicago, for appellants.

IVAN A. ELLIOTT, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, JOHN T. COBURN, and BEN SCHWARTZ, of counsel,) for appellees.

Mr. JUSTICE FULTON delivered the opinion of the court:

This is a direct appeal from the circuit court of Lake County seeking to test the constitutionality of a portion of our Election Code. The trial court sustained defendants' motion to strike and dismissed the complaint.

The plaintiff Lillian Kee Larvenette is a registered voter and resident of Cook County and a candidate for the office of Secretary of State. She intends to circulate nominating petitions in her behalf in Lake County and

other counties. Louis Fine, also a plaintiff herein, is a qualified voter and resident of Cook County who desires to solicit signatures on the petitions of the plaintiff, Larvenette, in Lake County and other counties in the State.

An Illinois statute, amending the Election Code, approved July 28, 1951, (Ill. Rev. Stat. 1951, chap. 46, pars. 156g and 156h,) provides:

"§ 1. It shall be unlawful for any person to solicit the signatures of registered voters upon a petition required by statute unless such person is a duly registered and qualified voter within and a resident of the county in which such signatures are being solicited, except that signatures upon a petition for a candidate for an office to be filled by election from a school, Senatorial, congressional or judicial district comprising more than one county or municipality located in more than one county may be solicited by any person who is a duly registered and qualified voter within and a resident of such district or municipality. No signature shall be valid or be counted in considering validity or sufficiency of such petition unless the requirements of this section are complied with.

"§ 2. Whoever violates the provision of Section 1 of this Act shall be fined not to exceed $1,000.00, or imprisoned in the county jail for not to exceed 6 months, or both."

The plaintiffs complain that these provisions prevent them circulating the nominating petitions of the plaintiff, Larvenette, in any county other than Cook, wherein they reside, and prevent them from obtaining sufficient names upon petitions in counties throughout the State.

The plaintiffs argue that these sections of the act are unconstitutional inasmuch as they constitute special or class legislation denying them equal protection of the laws, and are so unreasonable, arbitrary and capricious that they constitute an invasion of the right of the electoral franchise and are prohibited by the "free and equal election" clause

of the Illinois constitution and the fourteenth amendment of the United States constitution. The Attorney General, on the other hand, argues the constitutionality of the sections involved.

The precise question of the constitutionality of an act which attempts to control, in part, the areas in which circulators of nominating petitions may solicit signatures has never before been presented to this court. The constitutionality of the pertinent provisions of the Election Code, without the presence of the sections presently attacked, however, was sustained in the case of *MacDougal* v. *Green,* 335 U.S. 281. It was there held that the requirement that a minimum of two hundred signatures be obtained from each of fifty counties did not violate any portions of the constitution and that the passage of such a requirement was well within the powers of the State legislature.

Stripped of its verbiage, section 1 of the act provides that the circulator of a petition for a candidate for State office can only solicit signers of such petition in the county in which he resides. School, senatorial, congressional or judicial office seekers' petitions may be circulated in any county in the corresponding district. The admitted purpose of this section, on which both the State and the plaintiffs agree, is that by restricting the obtaining of signatures to the county of the solicitor's residence and registration the possibility of fraudulent signatures will be minimized, inasmuch as the personal acquaintanceship of both the circulator and the signer would prevent forgeries and fraud.

The question is whether or not this purpose may be accomplished in view of the exceptions stated in the statute. Section 22 of article IV of the constitution of 1870 requires that a legislative classification of persons subject to a statute must rest on some difference which has a reasonable and just relation to the act in respect to which the classification is proposed. As further stated by the State

in its argument, the inquiry into article IV, section 22, is whether there is any distinction between a State office and a congressional or judicial office with respect to solicitation of signatures upon nominating petitions.

The State attempts to show there is an adequate basis for the legislative classification created by the foregoing sections, in that the State as a whole affords considerably greater opportunity for the procurement of nongenuine signatures on a nominating petition than does the opportunity afforded in smaller districts.

As a practical matter, to agree with this statement is to beg the question. Circulators of nominating petitions for State office under this section of the statute may circulate such petitions only in the counties in which they reside and in which they are registered voters. Circulators of petitions for the office of congressman, however, might solicit signatures in as many as fifteen counties in the congressional district (Ill. Rev. Stat. 1951, chap. 46, par. 156d,) and those circulating petitions for a candidate for supreme court judge may circulate such petition in twenty-four counties. Ill. Constitution, art. VI, sec. 5.

A circulator of petitions in a senatorial district may circulate petitions in one or more counties for the office of State senator, yet should he undertake to accept a signature on a petition for State office on the same occasion, he is in violation of the law and subject to criminal penalties. Should he, in the course of walking down the street in a neighboring county, encounter a friend and accept a signature on a petition for State office, he again is in violation of the law. Yet, by the same token, he can cover twenty-four counties in a judicial district or fifteen in a congressional district and accept signatures on petitions with impunity.

As was stated in *Great Atlantic and Pacific Tea Co.* v. *Ervin,* 23 Fed. Sup. 70, the fourteenth amendment to the constitution does not prohibit governmental regulation by the State for the general welfare. The court went on to

state that the guarantee of due process demands only that the means shall not be unreasonable, arbitrary or capricious, and that they have a real and substantial relation to the object sought to be attained. Applying this ruling to the case before us, it is obvious that there is no real and substantial relation to the object sought to be obtained here, and the act can only be considered discriminatory, unreasonable and arbitrary. To state that the purposes for which the legislation was passed are achieved by preventing the circulation of petitions in other than the county of residence of the circulator of petitions for State office, while still permitting circulation of petitions in twenty-four counties in case of a judicial petition, would seem obviously unreasonable. If a man is considered unknown outside of his home county and unaware of the true names affixed to his petition in counties other than his own in a State-wide election, he must reasonably be considered just as unknown in twenty-four counties in a judicial election. If fraud may be perpetrated in a State-wide election by the circulation of a petition outside of the home county of the circulator, how can it be prevented in allowing the same circulator to move in twenty-four counties in a judicial election? The fallacy in the reasoning is apparent. Applying the rule of *Great Atlantic and Pacific Tea Co.* v. *Ervin,* the means here can only be said to be unreasonable, arbitrary or capricious without any relation to the object sought to be accomplished. We find no distinction, at least in this situation, between a district of twenty-four counties and the State at large.

The judgment of the trial court dismissing the complaint is reversed, and the judgment prayed for is entered in this court.

*Reversed with judgment here.*